Good morning. May it please the Court, Gerald Brannon on behalf of Appellant Mendoza-Lopez. I want to begin with Mendoza-Lopez's contention that the Court erred by imposing six levels for the use of a dangerous weapon. The Court will recall that Mendoza-Lopez was engaged in one continuous effort to flee from Border Patrol agents. He inadvertently rolled over the Border Patrol agent's foot as he was fleeing and as the agent was running alongside the or otherwise used is the exact same wording in the Aggravated Assault Guideline, 2A.2.2, which USA v. Bay addresses. May I ask you a question, assuming that Dayer applies to this enhancement? That is, assuming that there must be intent to injure with the car as a weapon. Then why is it that Mendoza's plea to count two of the indictment does not provide all that is necessary to support the indictment required that he intentionally use the Ford probe in assaulting the Federal officer? So I'm having difficulty understanding how everything that's necessary under Dwyer, if Dwyer applies, doesn't exist. Well, because he retained the right to challenge the sentence and the way the sentence was calculated. Oh, of course. But factually, why isn't there sufficient support for the requisite intent by virtue of his plea to count two, which necessarily involved an intent to use the car as a weapon to hurt the officer? Well, I think the Court had the responsibility to weigh culpability in this case, and they didn't do it. Maybe, but what's the answer to my question? I can't answer that question. Okay. He pled. And the Court did. He raised this issue in his sentencing petition papers, and the Court did not address the issue at all at sentencing, failed to address at all, and failed to specifically find that he intended to harm the agent. Okay. There was no mention of it at sentencing. Okay. I think the government's attempt to distinguish the interpretation of identical language appearing in two different guideline sections or the suggestion that Teja doesn't apply just defies logic, or that the enhancement is limited to the aggravated assault guideline defies logic also. Dea recently thinks anything can qualify as a dangerous weapon depending on how it's used. The scope of the guidelines applicability must be rationally related to the defendant's culpability. And intent is a necessary part of that equation, I think, by any reasoning whatsoever. Intent to harm is obvious from the guideline itself, and it's suggested not only by the wording from the guideline, but because the use of such an object in its capacity as a weapon with intent is what makes its use culpable. Having said that, the government contends that the evidence supports the conclusion that Mendoza-Lopez actually intended to use his vehicle as a dangerous weapon. I don't think the record supports that at all. Well, do you even need to win on that point, though, to win? In other words, assuming for the sake of this question that specific intent to harm was required and that the district court didn't make any findings, isn't that all you need to require the district court to go back and consider the issue? At the very least, I would agree. It would seem to me that in the absence of findings, you can't get anything better than that. In other words, we can't make a sentencing decision. I think the court could make a sentencing decision based on the record itself, since the facts, there's no ambiguity in what happened. Well, I agree with that. It's a fairly clear cut, and I think that based on that, the court can make this decision, whether this would apply in any event. I don't think the record does support it, and I think the best way to view that is by looking at the other cases that have analyzed and looked at in situations like this. Hernandez-Sandoval, where the defendant stopped his truck, changed gears, aimed the car at the vehicle, at the patrol officers, and then accelerated into them. That shows a distinct, discreet, distinct intent to harm. In U.S. v. Minor, the defendant ---- Well, what is the effect of pleading guilty to count two? Excuse me? I mean, that's precisely the factual basis of pleading guilty to count two. There's no other way he could be guilty of count two unless he intended to use the car to assault the officer. That's the only way he could have pled guilty, and he pled guilty to it. I would ---- I would suggest that because he was sentenced in excess of the terms of the plea agreement, that he had ---- he had a right to contest that, that factual basis. I'm sorry. That loses me. He was sentenced in excess. Well, that's why he retained it. There was an appeal waiver clause except in the event that he was sentenced beyond a certain level, which was set forth in the plea agreement. He was sentenced beyond that level. I'm sorry. Is that an issue? Is that an issue on appeal? I apologize. I didn't ---- That's not an issue on appeal. I didn't think so. But he does have the right to challenge his sentence thereby, and I think ---- Well, sure. He can challenge his sentence. He has a right to challenge the underlying factual basis that impacted that sentence or informed the court's decision to sentence. Okay. Or to apply this enhancement. Okay. This six-level enhancement. I just want to take a few moments and go to the two victim-related adjustments that were imposed by the Court. And I think that that was inappropriate because this was one indivisible course of conduct where the flight began at the border checkpoint and ended when he was apprehended. Now, the government tries to divide Lopez's act into multiple units and thereby justify the imposition of the two enhancements. If I understand it correctly, the district court basically said, look, stuffing three aliens into the trunk of a car was one harm, driving the van over the officer's toe was another, and a high-speed chase that endangered the public was a different act, each of them different decisions that he made, and discrete, separate aspects of conduct for which an enhancement is appropriate. Why is that wrong? First of all, in our argument, we're addressing the two enhancements that we believe were inappropriately applied. Yes, I understand.  One of them was for reckless endangerment. Reckless endangerment and then assault on a government officer. Correct. And I'm saying why, in your view, isn't it a totally different act to have driven the car at like one mile an hour over the officer's toe and then deciding not to escape at the speed limit, but to escape in a high-speed chase that endangered not the officer, but that endangered the public in general who are driving on the public roads of San Diego? I don't think you can distinguish. I don't think you can break up the flight into artificial segments like that. I think when he began his flight, he endangered the public. One of the public in this case was the border patrol agent, and I think the case of Hayes is really on point, contrary to what the government suggests, where the officers approached the defendant who was stopped in the car with a child, told him to get out, and then he stepped on the accelerator, sped up, and hit one of the officers, injuring the officer, and he also injured the child. And the court was faced with the same decision about imposing. The district court, in fact, imposed both enhancements that we're looking at here and said no, you can't do that because the defendant committed only one single act. I think that if you start, and then the government would say, well, I think the government suggested in its brief, well, there was no car chase here, and that should be the determining factor. However, by that logic, you would have to divide, you know, where do you draw the line? Do you draw the line if the guy goes north for a mile and then turns south or west, and, you know, in his high-speed chase, is that two distinct acts? I don't think you can arbitrarily divide up the chase like that. This chase started with the Border Patrol agent running after the car and ended when he was actually apprehended. All right. Thank you, Mr. Brennan. Mr. Riley. May it please the Court, Fred Riley, Jr., for the government. I'd just like to briefly address a point that Judge Graber raised. The district court did overrule all the objections, all the relevant objections, I should say, to the PSR and adopted the findings in the PSR, and the government would submit that a remand isn't necessary because the record does support the application of the enhancement for use of a dangerous weapon under 2L1.1B4B, in addition to what Judge Reimers pointed out, which is that the defendant pled guilty in count two to assault on a government officer. Let me ask you about each of those. The PSR says, in part, at page 36, that the purpose of the acceleration was to evade and flee the checkpoint, running over Schein's left foot and causing injury, which is at least a suggestion that his intent wasn't to harm but just to get away. So to the extent that the PSR contains factual findings, I'm not sure that they're 100% behind it. So you're right, Judge Graber. The district court and the PSR didn't really focus on this specific intent issue. That's right. And so the findings might or might not, certainly there could be findings made, but my question, I guess, is whether they were, in fact, made in the PSR. The findings in the PSR that the defendant wanted to get away from the Border Patrol checkpoint because he didn't want to get caught are not inconsistent with having an intent to stop this Border Patrol agent, Agent Schein, from apprehending him, which is exactly what was happening. Border Patrol Agent Schein --. But that, again, it's not inconsistent with, but it's also not a finding of. Well, that's right, Your Honor. But the record does support the application of the enhancement, and on that ground I believe that the sentence could be affirmed. My other question has to do with the assault plea, and that is there is some circuit precedent that says that with respect to assault, it's only a general intent crime, that you only have to prove that a reasonable person would find that the defendant's acts put a federal officer in fear of bodily harm, which is, again, shy of specific intent. So would pleading guilty necessarily get you there? Even if it didn't, Your Honor, later on in the plea agreement, the defendant actually stipulated to the correlative enhancement that he now relies upon on appeal in an attempt to avoid the adjustment. In other words, DEA centered on an upward adjustment for use of a dangerous weapon in the assault context. The parties appeared to assume in the plea agreement that the defendant would, in fact, be sentenced under the assault guideline. And so at excerpt of record, I believe it's 22, in the plea agreement, there's actually a stipulation for that enhancement for a dangerous weapon use, 2A.2.2.B.2.B. Looking at the plea agreement. I apologize. It's actually excerpt of record 6. Okay. Thank you. It's a dangerous weapon use plus 4. This is under 2A.2.2.B.2.B., which I believe was the enhancement at issue in the DEA decision. Even going to the legal issue, whether specific intent to injure ought to be read into this enhancement, a distinction can be drawn, and the government laid this out briefly in its brief, between the way that adjustment would function in an assault context and the way it would operate, the way it ought to be interpreted in the immigration context. The assault guideline covers crimes that necessarily involve violence or the threat of violence. And in that context, the way in which the use of a dangerous weapon would enhance a defendant's culpability is that the weapon is actually used to commit the assault. In contrast, in the immigration context, and 2L.1.1 really covers smuggling offenses, those crimes do not necessarily involve violence or the threat of violence, so that if a defendant uses a dangerous weapon, he introduces an element of danger or risk that is not necessarily present in the crime and, therefore, enhances his culpability. So it doesn't follow from DEA that use of a dangerous weapon in the smuggling context should be interpreted to require specific intent. DEA was concerned with very specific concerns that were raised in the assault context. There was a reason to read specific intent into that language, and those reasons really don't apply here. Turning briefly to the double-counting argument, the defendant argues that Hays is on point, but in that decision, the Sixth Circuit stated that it found no sensible way of disaggregating the conduct that supported the two enhancements, the enhancement for assault on a government officer and the enhancement for reckless endangerment during flight. And that was because a single act really caused both of the harms underlying those adjustments. It was a single act of punching the accelerator. The defendant hit the accelerator in his car at a DEA agent, struck the door of the agent's car, injuring him, careened off and continued, hitting a second car, injuring a boy inside the car. Those facts are very different from what you have here, where you have the defendant running over a Border Patrol agent's foot at a checkpoint, then proceeding on and engaging other officers and other agents in a high-speed chase. Counsel, it seems to me that it's a bit piling on. First, to have six upward for using a dangerous weapon, then two for injuring an official, doesn't that seem somehow a little much? Well, Your Honor, each of those adjustments really addresses a separate harm. And I would also point out, and this is something that the Court has sometimes looked at in these double-counting cases, for example, in Herrera-Rojas, which is cited in the government's brief, the purpose of each of those adjustments is really distinct. So, for example, the enhancement that the defendant complained about, the six-level enhancement for use of a dangerous weapon, really addresses that enhanced danger flowing from using a weapon, or in this case, an instrument that could be used as a dangerous weapon or could not, depending on the circumstances. The other adjustments address different harms. The adjustment for assault on an officer addresses the fact that the victim was a government official. The fact or the adjustment for recklessly creating the risk of death or serious bodily injury addresses the risk to the aliens by putting them in a trunk of a car where they could be trapped potentially. And that's a concern that this Court talked about at length in the Dixon opinion. And then the upward adjustment for reckless endangerment during flight was for yet a different risk and indeed involved yet different victims. And those were the officers that were put at risk by the flight from the Border Patrol checkpoint and also the general public. So Judge Phillips had a reason to apply each of those enhancements. Kagan. Do we have one for injury to an officer and two points and assault on a government official, three points? We do, Judge Fletcher. I can't somehow say that those are not double counting. They do address different concerns. Again, the actual injury adjustment applies regardless of the defendant's conduct. It's really focused on the result. This is, again, something that the Court focused on in the Herrera-Rojas decision. It is not concerned with what the defendant did so much as what happened as a result of that conduct. The government official enhancement, again, focuses on the fact that the victim was a government officer and the defendant acted in a manner that injured the officer knowing that. There's two prongs of that enhancement. And one, I think, A, is that the defendant acted or assaulted the officer because the officer was a government official, was motivated by that. And the second one was that the defendant acted knowing that the victim was a government official. And that really addresses a different concern, which is that we don't want defendants injuring government officials or law enforcement officers in particular, particularly when they're attempting to flee. So I think that the reasons for those adjustments are sufficiently distinct both on the law and on the facts of this case. I would also add, Your Honor, that that's not a double counting argument that's raised in the briefs, although it was, I believe, the type of argument that was at issue in the Cabral case. And with that, I'll submit. All right. Thank you, counsel. Is this time expiring? Thank you. I think your time has expired. I think I had two and a half minutes, Your Honor, when I left the podium. You were over. You were over. I'm sorry. As I explained, the time starts to run from your total time and runs down. And when it hits zero, then it starts getting red and negative. Can I just answer your question? Counsel, I really am very sorry. But your time has expired. Thank you. Thank you.
judges: B. Fletcher, Rymer, Graber